Case number five for argument today is Hackett v. South Bend. Mr. Romer. Please record. My name is John William Romer. I represent the plaintiff in this matter, Mr. Devin Hackett. This case is about the Uniformed Service Employment Reemployment Act, which is best known as ERISA. Officer Hackett, at all relevant time, is a member of the Armed Services of the United States. In 2014, he applied for a position, or actually an opening, within the South Bend Police Department Bomb Squad. Officer Hackett was serving in the Air Force Reserves, and his specialty was dealing with munitions. So he was very qualified for this type of assignment that he applied for. When he applied for the position, there was a number of other officers also that applied for the bomb squad. He at some point met with the city's human resource director, who informed him that he would not be afforded that position simply because of the possibility of his numerous deployments. Well, that struck Mr. Hackett in the wrong way. He then filed with the Department of Labor as well as the Equal Employment Opportunity Commission to launch an investigation of his denial for the bomb squad. Prior to those two agencies concluding their investigation, the city went back and they changed it. And they said, well, Mr. Hackett, we changed our mind. You can be a member of the bomb squad. Now, keep in mind that they had appointed two other officers to the bomb squad already. The Chief of Police then went and told one of those two officers, guys, listen, we have to put Mr. Hackett on the bomb squad. One of you will have to make the decision as far as which one of you will leave the bomb squad. That started an issue of reprisal from these officers. Of course, they wasn't happy that one of them had to give up that position. Counsel, I think you can assume that we've read the briefs. What we need you to address is the district court's rationales for its decision. Okay. And keeping in that line, Your Honor, the conclusion of the district court was that while Mr. Hackett might have received unfavorable treatment, it didn't rise to the level where a reasonable jury can conclude that he was retaliated against with respect. No, that's not what the district court said. The district court said not being on the bomb squad is not an adverse employment action, and therefore it was legally permissible for the city to hold his status against him. Now, that may be right or it may be wrong, but that's what the district judge held. If you would address that, because your brief essentially did not. You need to. I believe that the district court in its assessment that it did not violate ERISA was incorrect, in that one of the things that the court pointed out that he didn't lose any pay, he didn't lose any status by the action that the city took. Typically, if a law enforcement officer is put on a specialty unit like a bomb squad or a SWAT team, there is pay. There is hazardous duty pay. There is the status of being put on that particular unit. The district judge said that this decision did not affect Hackett's pay. Correct. What you're now saying is that it did. Is there someplace in the record we would go to see that? Again, I say your brief doesn't tackle the reasons your client lost, so where would we go in the record to see that this decision cost Hackett pay? Well, there is nothing in the record where they actually address the pay part of it. There is nothing that I can direct this court to go to. Did you—well, Hackett could have filed an affidavit saying this is the supplemental pay for being on the bomb squad. Did he do that? No, he did not. He could have filed the city's rules for computing pay. Did he do that? No. Okay. But the issue, though, too, beyond just the pay, that's just one part of it, Your Honor, with regard to a status position such as a bomb squad or a hostile negotiator within law enforcement. Those positions has the prestige in and of themselves. That's why officers apply for them, because of the title of being a member of a unique institution within their own agency. And that was kind of skirted and overlooked because they focus on, well, it didn't change his shift. It didn't change the pay issue. It didn't change his work schedule. Well, that's what the district court said. Right. It did not affect his pay, his rank, or his hours. That's correct. And what I would have expected to see is pointing to evidence that it did affect at least one of those things. Is there any evidence that it affected his rank or his hours? No. There is no evidence on the record where it's—because it had nothing to do with the rank that he held. His rank, even if he was put on the bomb squad, which he was, did not change his nature. He wasn't like a patrol one and then you put on the bomb squad and you elevated to a patrol two. Patrol two would be higher rated than a patrol one. It didn't have those consequences with respect to the bomb squad. Mr. Ulmer, in your appellate brief, you focused on this hostile environment theory and the legal question that I guess we have not decided before about whether hostile environment claims are viable under the Service Members Act. Was that a theory, this hostile environment question, one that you raised in the district court? I think it was raised, but— How? The defense moved for summary judgment. Correct. I've looked at your brief. I don't see any discussion in the district court, and I don't see any discussion of hostile environment there. Well, I would submit, Your Honor, that it was there, but it wasn't overly argued at the lower court. The judge in this case, in his opinion and ruling, spent six pages dealing with the hostile work environment before he then addressed the other issue that was argued at the lower court, which was the issue about his promotion to sergeant when he tested for the sergeant position. Well, there's an argument, at least theoretically available here, it seems to me, that the district judge applied the wrong standard in evaluating a retaliation claim under the Service Members Act. Correct. And an argument to borrow from White against Burlington Northern, in essence, that there's a lower standard for adverse employment actions. I don't see that argued in your appellate brief here. Well, the standard I didn't touch upon, but just as you pointed out, Ron, was that the standard was lower when we're talking about retaliation because we tried to encourage the purpose of ERISA was to give service members the notion that once they serve in their country and they come back to their place of employment, they're not going to be harassed because they have to honor their duty to this country when they're out on deployment. And when they come back, they can essentially begin their role that they left unfettered by any mistreatment. Well, yeah, that's the substantive right. But the retaliation standard was elaborated upon in the Burlington Northern case, or maybe the White case. Okay, thank you. And I think that was really clear. I think that the district court also picked up on that, but they kind of summed it up in the sense that, well, we had a couple officers because they were upset because they had to remove themselves, or one of them had to remove themselves. I'm sorry, my time's up. It's not actually up, but it's your choice. You've got some rebuttal. I'll save my time. Use what's left for rebuttal. Okay, thank you. Certainly, Mr. Ulmer. Mr. Groves. May it please the court. My name is James Groves, and I represent the appellees. A question has been raised here as to whether a hostile work environment claim is viable under the Uniform Services Act. Let me try to address that at the outset. Without addressing the waiver of that argument, let's assume that the argument of hostile work environment, as it's been briefed, comes into play. I could not find any case law regarding hostile work environment under the Uniform Services Act. It does talk about conditions of employment? It does talk about conditions of employment. That's the statutory language in other employment discrimination statutes. Yes, your Honor. Title VII, Family Medical Leave Act cases. It does talk about that. And with all candor to this court, I would suspect the analogy can be drawn so that it could fit under the Uniform Services Act. I'm not arguing that. I'm arguing that the suggestion of a hostile work environment, which has been heavily briefed here, was waived. It was never discussed in the court below. Looking at the matter de novo, there seemed to be no discussion of that, nor any evidence of a hostile work environment, as we understand it in these kinds of cases. Your Honor, skipping, kind of flowing from that, I think there is a lack of evidence of any department-wide offense against Mr. Hackett. It's a couple colleagues that he seems to be complaining about. It doesn't get you there. Our focus in hostile environment cases is on supervisors. Correct. What do they know? How do they deal with this kind of co-worker harassment if it happens? Right? That's my opinion. It doesn't have to be department-wide. It can just be just the bomb squad or just this shift or just this small group of workers, right? If the supervisor tolerates a hostile environment, that can be a basis for liability, right? Supervisor Capet, yes. Yes. Okay. I would concede that. Okay. Your question seems to direct me to the facts of the case or the lack of facts, if I may. Go ahead. I believe in the record there was testimony where, according to Mr. Hackett, when he was placed on the bomb squad, he was ostracized. They said he pulled away and left him in the lurch. On one occasion, he was told to sit at the front desk. Well, that was explained by his supervisor who indicated I had to direct him to the desk, to the computer there, because in order to come onto the bomb squad, there was information that had to be filled out. That testimony solely from Hackett does not give us the kind of evidence that is compelling sufficiently to make a prima facie case of a systemic kind of harassment or hostile work environment. So there's no evidence in my mind, at least, of any systemic endorsement of any of the conduct that he alleges, getting to the Blue Falcon conduct also. One individual who admitted in evidence that he posted the Blue Falcon comment on Facebook. That's not a supervisor, first of all. So Sergeant O'Neill would have been a supervisor? Is that right? No, Sergeant O'Neill was not a supervisor. The only supervisor capacity would have been on the bomb squad. If we're talking about a supervisory relationship here, there was a supervisor on the bomb squad. He testified he didn't know anything about Blue Falcon or what it even meant. Never heard that. Secondly, it's a little bit vague in the evidence that Hackett is trying to present as to whether the Blue Falcon comment by O'Neill on Facebook related to the bomb squad ostracism or whether it related to his application for promotion as a night sergeant. All of this becomes a little bit of a checkerboard of just discontent because of treatment by a couple colleagues, or at least so he says. And nasty treatment by some of your fellow workers doesn't get you much. No, but let's go back to the early decades of Title VII law in this country where courts would order people to be hired or promoted. And would it be your view that, for example, ostracism of somebody in those situations, encouraged and tolerated by management, could amount to retaliation under Title VII? I've sorted through this hostile work environment issue in my head and talked to colleagues about it. Let me try to answer your question. It's my opinion there is no stand-alone claim cause of action for hostile work. There has to be a predicate. The Supreme Court has said that. The predicate is that most employment discrimination statutes forbid discrimination with respect to the, quote, terms and conditions of employment. And the Supreme Court has been holding ever since meritor, way back in the 1990s, that things that make the environment harsher for one category of persons than another produces a difference in the terms and conditions of employment. Hostile environment is a misleading phrase. Retaliation is a misleading word. But the statutory term is difference in the terms and conditions of employment. Are you denying the possibility that somebody who is made to feel miserable because he is in the military reserves could make a claim that he is being treated differently in the terms and conditions of employment? Now your question puts the qualification because he's in the military. Someone who is made to feel miserable has no cause for that. I wish you would address the question I asked rather than some different question. I will answer it. No, I am not denying that. I am saying someone who is made to feel miserable in his employment because he's in the military, when that making him feel miserable affects, adversely affects a condition of his employment, that gives rise to a viable prima facie claim. And what about if it's not because he's in the military but because he invoked his rights under the Uniformed Services Act? That too, because that's the second section of the Act. The invocation of the rights and the retaliation because of that invocation gives rise to a cause of action so long as it creates an adverse condition or an adverse impact on a condition of his employment. And if a hierarchical paramilitary, quasi-military sort of organization like a police department tolerates ostracism, knows about it and tolerates it when somebody asserts his rights either based on race or sex or age or military service. Correct. Those are all viable theories. Those are viable theories. Okay. But we do not have that here. We don't have the evidence of that kind of either systemic or supervisory endorsement. We just don't have it. Your Honors, any other further questions? Thank you, Mr. Groves. Thank you very much. Anything further, Mr. Ulmer? You have one minute. Thank you, Your Honors. Real briefly, you will note also that one of the issues also was once Officer Hackett was actually placed on the bomb squad, the administration changed the rule. They said only certified technicians can receive training. And that was done with the whole purpose of disallowing Mr. Hackett to receive the necessary training to actually become a certified bomb tech, Your Honor. Thank you. Thank you very much, Counsel. The case is taken under advisement.